IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LORNELL LEE MILLER | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | |
| | § | NO. 3-08-CV-1440-G |
| RICK THALER, Director | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division | § | |
| | § | |
| Respondent. | § | |

**FINDINGS AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Lornell Lee Miller, a Texas prisoner, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254.   For the reasons stated herein, the application should be denied.

I.

Petitioner was convicted of murder and sentenced to 50 years confinement.  His conviction and sentence were affirmed on direct appeal. *Miller v. State*, No. 04-95-00327-CR, 1997 WL 94154 (Tex. App.-- San Antonio, Mar. 5, 1997, pet. ref'd).  Petitioner also filed an application for state post-conviction relief.  The application was denied without written order on the findings of the trial court. *Ex parte Miller*, WR-53,895-05 (Tex. Crim. App. Dec. 19, 2007).  Petitioner then filed this action in federal district court.

II.

In three grounds for relief, petitioner contends that: (1) he received ineffective assistance of counsel; (2) he was denied due process by the admission of extraneous offense evidence; and (3) the

prosecutor made improper jury arguments at both the guilt-innocence phase and the punishment phase of the trial.[1]

A.

The standard of review in federal habeas cases is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* Pub.L. 104-132, 110 Stat. 1214 (1996). Where, as here, a state court has already rejected the claims raised by petitioner, a federal court may grant habeas relief only if the state court adjudication:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 411-13, 120 S.Ct. 1495, 1522-24, 146 L.Ed.2d 389 (2000). A state court decision is contrary to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir.), *cert. denied*, 124 S.Ct. 2812 (2004), *citing Williams*, 120 S.Ct. at 1519-20. A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 120 S.Ct. at 1523. To be unreasonable, the application of clearly established federal law must be more than merely

---

[1] As part of his answer, respondent argues that petitioner's claims are barred by the AEDPA statute of limitations. (*See* Resp. Ans. at 7-9). The court need not decide this procedural issue as petitioner is not entitled to federal habeas relief in any event. *See Coker v. Thaler*, ___ F.Supp.2d ___, 2009 WL 3849647 at *2 (N.D. Tex. Nov. 16, 2009) ("Given that limitations is not jurisdictional, it follows that the Court is not required to address it prior to denying relief on the merits.").

incorrect. *Gardner v. Johnson*, 247 F.3d 551, 559 (5th Cir. 2001). The standard is one of "objective reasonableness." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000), *cert. denied*, 121 S.Ct. 2220 (2001), *citing Williams*, 120 S.Ct. at 1521-22. Factual determinations made by state courts are presumed to be correct and are unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

B.

Petitioner argues that he received ineffective assistance of counsel because his attorney did not call Cora Carpenter Blakes as a defense witness and did not investigate the possibility that a prosecution witness, Robert Mitchell, also stabbed the victim.

1.

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *Strickland*, 104 S.Ct. at 2064. Second, the petitioner must prove that he was prejudiced by his attorney's substandard performance. *Id.* at 2067. Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068; *see also Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993) (habeas petitioner must show that trial result was unreliable or proceeding fundamentally unfair due to deficient performance of counsel). There is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance.

*See Romero v. Lynaugh*, 884 F.2d 871, 876 (5th Cir. 1989), *cert. denied*, 110 S.Ct. 1311 (1990). In order to obtain federal habeas relief, a petitioner must affirmatively show how the actions of his attorney deprived him of a fair trial. *See Czere v. Butler*, 833 F.2d 59, 63-64 (5th Cir. 1987).

2.

Petitioner was charged with fatally stabbing Alan D. Hurt. (*See* St. App. Tr. at 3). At trial, petitioner admitted stabbing Hurt, but said that he acted in self-defense when Hurt propositioned him for sex, choked him, and cut him with a knife. (*See* SF-IV at 296-99). Petitioner gave a similar statement to the police soon after the stabbing. (*See* SF-III at 172-74 & St. Exh. 16). In view of petitioner's admissions, counsel made a strategic decision to focus on the theory of self-defense. A total of seven witnesses testified for the defense, including Jarod Munn, who said that he once was propositioned for oral sex by Hurt. (*See* SF-IV at 400-01). Petitioner now complains that his attorney failed to call another potential defense witness, Cora Carpenter Blakes, who allegedly knew that Hurt planned "to approach the petitioner for the purpose of sex." (*See* Hab. Pet. at 7, ¶ 20(A)).

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). To prove that counsel was ineffective for failing to call a witness, "the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Id.* Even if Blakes knew that Hurt planned to approach petitioner for sex, there is no evidence that this witness was available to testify and would have done so at petitioner's trial. Moreover, defense counsel called Jarod Munn to testify on the same subject. After Munn concluded his testimony, defense counsel asked petitioner if there were any other witnesses

who were not called. (SF-IV at 410-11). Other than petitioner's sister, Barbara, who was the next witness called by the defense, petitioner did not identify any other witnesses. (*Id.* at 411). On these facts, the state habeas court determined that counsel was not ineffective for failing to call Blakes as a defense witness. *Ex parte Miller*, WR-53,895-05, Tr. at 38-39. Petitioner has failed to rebut that finding by clear and convincing evidence.

3.

Nor was counsel ineffective for failing to investigate the possibility that Robert Mitchell stabbed Hurt. Although petitioner admits stabbing Hurt twice, he claims that Mitchell, who allegedly was in a back bedroom of Hurt's apartment, stabbed the victim nine more times, causing his death. (*See* Hab. Pet. at 7(a)). There is absolutely no evidence in the record to suggest that Mitchell stabbed Hurt or otherwise was involved in the commission of the offense. Not only did petitioner admit to stabbing the victim, but Hurt identified petitioner as the lone assailant in a dying declaration. (*See* SF-III at 139-40; SF-IV at 296-99). Had counsel pursued this fanciful theory at trial, it would have undermined petitioner's claim of self-defense--the only legitimate argument he had for an acquittal. This ground for relief is without merit and should be overruled.

C.

Next, petitioner contends that he was denied due process by the admission of extraneous offense evidence. At issue is testimony elicited from petitioner on cross-examination regarding a prior argument he had with the victim and the alleged theft of a VCR. Regarding petitioner's argument with Hurt, the prosecutor asked:

Q.   You and Alan did have arguments?

A.   Yeah.

Q.   Okay.

A.   Not arguments, we had one argument.

Q.   You had one argument?

A.   Yes.

Q.   Tell us about that.

\* \* \* \*

A.   I can't exactly tell you when, but it was one night when I was coming to work. And when I walked in the door Alan said, "Lee, you don't belong here, you're not working tonight." And I said, "Well, I'm waiting for the manager and let him tell me," you know. And Alan got all upset because he didn't want me there. He got all upset and wanted me to leave, and he called the police on me.

Q.   He actually called the police on you?

A.   Yes, he did.

Q.   It got down to where Alan felt he had to call the police on you?

A.   I mean, because I wouldn't leave.

Q.   Okay. Isn't it fair to say, Mr. Miller, that Alan really didn't regard you as a friend?

A.   Yes, we were friends.

(SF-IV at 324-25). The prosecutor also asked petitioner if he tried to pawn or take a VCR that belonged to his sister. (*Id.* at 338). Petitioner answered, "No." (*Id.*). Defense counsel timely objected to both areas of inquiry. (*Id.* at 324 & 338). The objection to evidence regarding a prior argument between petitioner and Hurt was overruled. (*Id.* at 324). However, the trial court sustained counsel's objection to evidence regarding the alleged VCR theft, and promptly instructed the jury to disregard both the question and the answer. (*Id.* at 338-39). In affirming these rulings, the state appeals court held that petitioner's relationship with the victim was admissible under Tex. Crim.

Proc. Ann. art. 38.36,[2] and that the trial court's instruction to the jury cured any error resulting from the question about the VCR theft. *See Miller*, 1997 WL 94154 at *1.

Although couched in due process terms, petitioner cites no federal authority to support his claim for habeas relief. Instead, petitioner's claim arises solely under Texas law. The misapplication of state law or procedural rules is not cognizable on federal habeas review unless the petitioner can establish that the error deprived him of a fair trial. *See Evans v. Thigpen*, 809 F.2d 239, 242 (5th Cir.), *cert. denied*, 107 S.Ct. 3278 (1987); *Mattheson v. King*, 751 F.2d 1432, 1445 (5th Cir. 1985), *cert. dism'd*, 106 S.Ct. 1798 (1986). No such proof exists here. The state court found that petitioner's relationship with the victim was admissible under Texas law. The jury was instructed to disregard the prosecutor's question about the alleged theft of a VCR. Even if one or both of these questions was improper, the court cannot say that petitioner was prejudiced thereby, particularly since he admitted stabbing the victim twice. This ground for relief should be overruled.

## D.

Finally, petitioner complains that the prosecutor made improper jury arguments at both the guilt-innocence phase and the punishment phase of the trial. In his closing argument on guilt-innocence, defense counsel suggested that one of the state's witnesses, Odell Fuller, was not credible. (*See* SF-V at 448-49). On rebuttal, the prosecutor argued:

> You remember Odell Fuller. Odell Fuller told you that the defendant
> went over there to--go over to Mr. Hurt's--well, Mr. Fuller did not

---

[2] Article 38.36(a) provides, in pertinent part:

> In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

TEX. CODE CRIM. PROC. ANN. art. 38.36 (Vernon 2005), *formerly* Tex. Penal Code Ann. art 19.06 (Vernon 1974).

> know why--who the victim in the case was at the time, just that he was
> talking [sic] the defendant over there, giving him a ride to Mr. Hurt's
> house so that he could get a television. As he put it--as Mr. Fuller put
> it, he said he was going to pay me--the defendant said he was going
> to pay me $25 dollars to take him over to somebody's house to get a
> television. That's what Mr. Fuller told you. *Mr. Fuller was credible.*
> I mean, you-all have heard and listed to his testimony. *He was*
> *credible.*

(*Id.* at 460) (emphases added). Defense counsel objected to this argument as improper "bolstering,"

but the objection was overruled. (*Id.* at 460-61). In his jury argument at the conclusion of the

punishment phase of the trial, the prosecutor stated:

> Well, crime is out of control, I think we all know that. You know,
> pick up the paper, you look at TV and read, or see on the television--
>
> * * * *
>
> You know, you see another person killed. Now, I know he's--
>
> * * * *
>
> And, I don't know--I don't know if you say this to yourself, but I do.
> I've said it, and I have friends that say, "You know, when are we
> going to do something about that?" Before I began to prosecute, I
> guess. I mean, when is the system going to do something about the
> crime problem that we have?

(*Id.* at 549-50). Once again, defense counsel objected, but the objection was overruled. (*Id.*).

Petitioner now contends that both arguments were improper and deprived him of a fair trial.

An improper jury argument rarely justifies federal habeas relief. In order to establish a

constitutional violation, a petitioner must show that the argument was so prejudicial that it deprived

him of a fair trial within the meaning of the due process clause of the Fourteenth Amendment. *See*

*Kirkpatrick v. Blackburn*, 777 F.2d 272, 281 (5th Cir. 1985), *cert. denied*, 106 S.Ct. 2907 (1986).

This, in turn, requires proof that "the misconduct is persistent and pronounced or that the evidence

of guilt was so insubstantial that the conviction would not have occurred but for the improper

remarks." *See Jones v. Butler*, 864 F.2d 348, 356 (5th Cir. 1988), *cert. denied*, 109 S.Ct. 2090 (1989) (citing cases). The prosecutor's remarks were neither "persistent" nor "pronounced." In view of the overwhelming evidence against petitioner, there is no likelihood that the remarks were "a crucial, critical, highly significant factor upon which the jury based its verdict of guilty." *Harris v. Cockrell*, 313 F.3d 238, 245 (5th Cir. 2002), *cert. denied* 124 S.Ct. 1503 (2004). This ground for relief should be overruled.

## RECOMMENDATION

Petitioner's application for writ of habeas corpus should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED:   February 10, 2010.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE